UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Timothy Leighton, John Taney, Arlen Orth,
Richard Terry, and William Wallace,
individually and as representatives of a class of
similarly situated persons,

    Plaintiffs,        Case No. 19-cv-1089 (JNE/JFD)
                  ORDER
v.

Delta Air Lines, Inc. and Administrative
Committee of Delta Air Lines, Inc.,

    Defendants.

---

  This is a putative class action brought by five retired employees of Delta Airlines. Plaintiffs claim that the Delta Airlines Administrative Committee (hereinafter "Delta" or "Delta AC") unreasonably interpreted the terms of their pension plan such that their pension benefits were wrongfully reduced. Specifically, Plaintiffs claim that that their workers' compensation settlements—each of which was paid as a lump sum rather than in monthly payments—permitted reduction of their Social Security benefits by a prorated sum, but did *not* permit a corresponding reduction of their pension benefits once they retired. The pension reduction, they claim, violated the Employee Retirement Income Security Act of 1974 ("ERISA") (codified at 29 U.S.C. § 1001 et seq.).

  Four motions are presently before the Court: Defendants' Motion for Summary Judgment or in the Alternative a Remand to the Delta AC [ECF 68] and Plaintiffs'

1

Motions for Summary Judgment [ECF 59], to Certify Class [ECF 54], and to Exclude Defendants' Expert Testimony [ECF 62].

Plaintiffs receive pensions from the Northwest Airlines Pension Plan for Contract Employees (the "Plan").[1] Each of the five Plaintiffs suffered a work-related injury and filed a claim for workers' compensation. Each Plaintiff settled his claim with Delta, and each elected to have the claim paid as a lump sum instead of as recurring workers' compensation payments. The Social Security Act (SSA) requires the Commissioner of Social Security to "approximate as nearly as practicable the reduction" of workers' compensation from social security benefits. 42 U.S.C. § 424a.  Because the Social Security Administration can prorate lump sum workers' compensation settlements using different formulas, the settlements contain proration language to make such reductions unambiguous for the Social Security Administration.  *See* Plaintiffs' Opposition to Defendants' Mot. Summ. J. at 7 [ECF 82]; *see also* Wallace Stip. for Settlement, Ex. 39, at DELTA 0420, ECF 73-2 at 224 ("The calculation of the payment to be made to employee has been made by estimating the potential [Social Security Disability Income] benefits employee is entitled to through the Social Security Act….As such, the payment to be made to the employee has already taken into account the reduction described by 42 USC §424(a) and (b)."); *see also* Social Security Administration, Program Operations Manual System (POMS), Disability Insurance (DI) § 52150.060(E) ("Prorating a

---

[1] Northwest Airlines and Delta Airlines merged during Plaintiffs' employment. The merger maintained Northwest's pension plan for Northwest employees and administration of the Plan was assumed by Delta.

2

Workers' Compensation/Public Disability Benefit (WC/PDB) Lump Sum Settlement") (providing three methods for prorating lump sum settlements to Social Security benefit offsets). Each of the Plaintiffs' settlement agreements includes language that prorates the lump sum amount into monthly amounts based on life expectancy. For example, Plaintiff Orth's agreement contains the following language:

> The remaining $19,800.00 is intended to compensate the employee over the employee's life expectancy based upon his current age of 61 years which is 20.81 additional years (249.72 months). Accordingly, the net lump sum of $19,800.00 paid to the employee pursuant to this Stipulation represents a payment of $79.29 per month. . . . . [T]he present day value is calculated by determining the employee's entitlement to permanent total disability benefits pursuant to Minn. Stat. §176.101, subd. 4, including the employer and insurer's right to reduce the amount of permanent total disability benefits by the social security disability benefits the employee would be entitled to receive.

Defs. Mot. Summ. J., Ex. 34, Orth Admin. Record, at DELTA 0266–67, ECF 73-1 at 342–43.

The Northwest Plan includes offset provisions, i.e., provisions that reduce, or "offset" monthly pension payments to account for non-pension benefits paid to a retiree. The offset provision at issue in this case is titled "Workers' Compensation Benefits." It defines "Workers' Compensation Benefits" as:

> [A]ny **periodic benefits payable** to a Participant:
> (i) as compensation for a personal injury (including any occupational disease) arising out of and in the course of employment for the Employer, and
> (ii) with respect to a period of time after the Participant has attained age sixty-five (65) years,
> (iii) in accordance with a statute such as a Workers' Compensation or similar law. . . . and

3

> (iv) as compensation for lost income or earnings (rather than as compensation for the loss of the function or use of a bodily member or other bodily function). The amount of the "Workers' Compensation Benefits" payable to the Participant shall be determined and redetermined from time to time to take into account the commencement, discontinuance, increase or decrease of such benefits.

Plan § 1.2.32 (emphasis added).

The parties agree that monthly pension payments are properly reduced by any monthly workers' compensation benefit payment. In other words, there is no dispute that "periodic benefits payable" covers payments paid on a monthly basis. In the absence of a settlement, workers' compensation awards would normally be received weekly, bi-weekly, or monthly. Those payments would end once an employee retired and could receive Social Security retirement benefits. Retirement eligibility at Delta can be earlier than Social Security eligibility because the Plan considers age 65 a normal retirement date. Plan § 1.2.18. Social Security retirement age, however, depends on your birth year. 42 U.S.C. § 416(l). This is why monthly workers' compensation payments, which are meant to take place of wages, can be paid to a retired employee—retirement can predate Social Security eligibility.

But what if the injured employee, rather than proceeding to a hearing on his claim, settles the claim, and in his settlement requests (or, at any rate, agrees) that his workers' compensation award be paid in the form of a lump sum rather than in monthly payments? The parties disagree about the answer. Plaintiffs say that when they agreed (in their settlements) that the lump sum could be amortized over their lifetime, that meant only that the Social Security Administration could amortize their settlements for their

disability payment reduction calculation, not that their Northwest pensions could be reduced. Delta maintains that a lump sum settlement may be amortized according to the schedule contained in the settlement agreement, and that its procedures for pension disbursements effectuate the Plan and are consistent with ERISA.

Delta's staff manual outlines procedures for pension disbursements. When a Plan participant applies for pension benefits, the manual requires staffers to inquire whether the participant currently receives workers' compensation benefits or previously settled a workers' compensation claim. If the participant previously settled a claim, the manual directs staff to request a copy of the settlement document and prorate any lump sum settlement into a monthly amount. The manual directs the employee to look to the settlement's Social Security Administration proration language for assistance. Delta then deducts that pro-rated amount from the monthly pension amount it pays. Delta did that in each of the Plaintiffs' cases: It located the proration language in each settlement, prorated the lump sum over the period specified in the language, and offset the monthly pension paid by that prorated amount.

Each Plaintiff appealed Delta's plan interpretation to the Plan fiduciary—the Delta Plan Administrative Committee. Plaintiffs argued that lump sum settlements cannot constitute "Workers' Compensation Benefits" under the Plan because they are not *periodic benefits payable*. The Delta AC confirmed that the lump sums in the settlements constituted "Workers' Compensation Benefits," as defined by the Plan, allowing the Plaintiffs' pensions to be offset monthly by a prorated amount of their lump sum settlement. Plaintiffs commenced this action on April 22, 2019, raising a claim for

5

benefits under ERISA § 502(a)(1)(B) on their own behalf and on behalf of a putative class. 29 U.S.C. § 1132(a)(1)(B).

I.   **The Summary Judgment motions**

    A.  Standard of Review

The court grants summary judgment when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In its evaluation, the court draws any inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Section 502(a)(1)(B) of ERISA allows a plan participant to bring a civil action to recover benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). In an action for the denial of benefits under § 502(a)(1)(B), if the ERISA-governed plan gives the administrator authority to interpret its own plan terms, then the district court applies an abuse of discretion review to a plan administrator's interpretation. *Firestone Tire & Rubber Co. v Bruch*, 489 U.S. 101, 115 (1989); *see also Knowlton v. Anheuser-Busch Companies Pension Plan*, 849 F.3d 422, 428 (8th Cir. 2017). The court must uphold the plan administrator's interpretation if it is reasonable. *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc).[2] Here, the Delta AC is the Plan fiduciary and administrator with the discretion to interpret plan language. Plan § 7.7(b).

---

[2] *See also Ingram*, 812 F.3d at 634 ("Where a plan fiduciary offered a reasonable interpretation of a disputed plan provision, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination.") (quoting *Spizman v. BCBSM, Inc.*, 855 F.3d 924, 929 (8th Cir. 2017)).

Defendants are entitled to Summary Judgment if their plan interpretation is reasonable. It need not be the only reasonable interpretation.

In its review, the district court is limited to the administrative record. *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016). Unless the plan's language specifically gives the plan administrator authority to review auxiliary documents, the court applies de novo review to the interpretation of outside legal documents. *Riley v. Sun Life & Health Ins. Co.*, 657 F.3d 739, 741 (8th Cir. 2011) (applying de novo review when the administrator interpreted case law); *see also Meyer v. Duluth Bldg. Trades Welfare Fund*, 299 F.3d 686, 689 (8th Cir. 2002) (applying de novo review when the administrator interpreted a Minnesota law). The Delta Plan does not give the Delta AC authority to interpret outside contracts such as settlement agreements. The Court, therefore, reviews Delta's interpretation of Plaintiffs' settlement documents de novo.

    B.  The reasonableness of the Delta AC interpretation.

Plaintiffs challenge the reasonableness of the Delta AC's Plan interpretation, which found Plaintiffs' past lump sum workers' compensation settlements are "Workers' Compensation Benefits" under the Plan. The Court applies five factors outlined by the *Finley* Court to determine whether an ERISA plan administrator's plan interpretation is reasonable. *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir. 1992). "While these non-exhaustive factors 'inform our analysis,' the ultimate question remains whether the plan interpretation is reasonable." *Peterson v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 776 (8th Cir. 2019), *cert. dismissed sub nom. UnitedHealth Grp. Inc.*

7

*v. Peterson*, 140 S.Ct. 339 (mem) (2019), (citing *King*, 414 F.3d at 999). Those factors are whether the plan administrator's interpretation:

(1) is contrary to the plan's clear language,

(2) renders another plan term meaningless or internally inconsistent,

(3) is consistent with (promotes) the plan's goals,

(4) violates ERISA, and

(5) is consistent with its previous interpretations.

*Finley*, 957 F.2d at 622.

Plaintiffs argue that the Delta AC's interpretation is not reasonable: that lump sum settlements cannot constitute workers' compensation under the Plan because they are not "periodic benefits payable." To aid its evaluation of the reasonableness of Delta's interpretation the court turns to the factors identified in *Finley*.

i. Is Delta's interpretation contrary to the clear language or does it render another plan term meaningless?

The first step in the *Finley* analysis is to look to see whether the administrator's interpretation is contrary to the plan language or renders a plan term meaningless. *Finley*, 957 F.2d at 621. The first issue is whether lump sum settlements can constitute "periodic benefits payable." Plaintiffs argue that the key lies in the word "periodic," asserting that the lump sum workers' compensation settlements are not periodic because they were paid all at once. Delta argues that lump sum settlements are substitutes for periodic benefits and that periodic does not modify "payable" but rather modifies "benefits."

8

The Court begins with the plan document. *Bond v. Cerner Corp.*, 309 F.3d 1064, 1067–68 (8th Cir. 2002).[3] When evaluating a plan administrator's interpretation, the court should look to see that "[e]ach provision [was] read consistently with the others and as part of an *integrated whole*." *Id.* at 1067–68 (emphasis in original). The Court first looks to the plan itself for context and gives the terms their ordinary meaning. *Spizman*, 855 F.3d at 927. "Words are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Finley*, 957 F.2d at 622 (quotations omitted). "An interpretation of a term is reasonable if the interpretation conforms with ordinary meaning, which can be derived from 'the dictionary definition of the word *and the context in which it is used*." *Kutten v. Sun Life Assurance Co. of Can.*, 759 F.3d 942, 945 (8th Cir. 2014) (emphasis added).

The Plan defines "Workers' Compensation Benefits" as "any periodic benefits payable…." Plan § 1.2.32. Because the Plan does not further define these terms, it is reasonable to look to a similar context. *Kutten*, 759 F.3d at 945. In examining workers' compensation benefits under the Social Security Act, the Eighth Circuit has said that "[w]orkers' compensation benefits…are 'periodic benefits'…[and] '[p]eriodic benefits' include lump-sum awards received as a *substitute* for periodic payments." *Olson ex rel. Est. of Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999) (citing 42 U.S.C. § 424a(a)(2)(A); § 424a(b)) (emphasis added). In other words, periodic benefits in the workers' compensation context are not solely defined by their payment structure. Also

---

[3] *See also Spizman*, 855 F.3d at 927; *see also Kitterman v. Coventry Health Care of Iowa, Inc.*, 632 F.3d 445, 448 (8th Cir. 2011).

9

informative is the Social Security Administration's assessment of a similar offset issue. The Social Security Administration's Program Operations Manual System requires the Administration to prorate workers' compensation lump sum awards into monthly amounts for social security disability insurance (SSDI) offset calculations. Social Security Administration, POMS, DI § 52150.060.A. Further, the Social Security Act explains:

> (b) Reduction where benefits payable on other than monthly basis
>> If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed by subsection (a).

42 U.S.C. § 424a(b). It distinguishes between a periodic benefit and periodic payments by acknowledging it can be paid on "other than a monthly basis." *Id.* Further, it shows that, in the workers' compensation context, a lump sum can be a "commutation of" or "substitute" for periodically paid benefits.

Each Plaintiff's workers' compensation settlement agreement referred to Social Security benefits. Thus, it was reasonable for the Delta AC to look to other Social Security contexts to define Plan terms, such as the SSA. The SSA language supports Delta AC's finding that Plaintiffs' lump sum workers' compensation settlements fall within the Plan's definition of "Workers' Compensation Benefits" because workers'

10

compensation is a periodic benefit. This need not be the only reasonable interpretation; even if different reasonable interpretation of the Plan exists, the Delta AC is entitled to deference. *King*, 414 F.3d at 999; *see also Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 863 F.3d 1036 (8th Cir. 2017) (finding the administrative committee may choose where plan meaning is opening to multiple, reasonable interpretations).

Second, the parties dispute whether the word "payable" in "periodic payments payable" means that the benefits have *not yet paid*. Plaintiffs say yes. They argue that because the lump sum settlements were *already paid*, they are *no longer payable*. They assert that the words of the Plan are to be given their plain and ordinary meaning, and that the plain and ordinary meaning can be found in a dictionary definition. They cite Merriam-Webster's Dictionary, which defines "payable" as "that may, can, or must be paid." *Payable*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/payable (last visited Mar. 31, 2022). This definition means, so say Plaintiffs, that once something is paid, it can no longer be considered payable. Delta, on the other hand, argues that it was reasonable for the AC to find that lump sum workers compensation awards are a substitution for periodic payments.

Delta's interpretation is supported by both the SSA and Eighth Circuit precedent. The SSA, as quoted above, recognizes the necessity of benefit reductions in the event of lump sum payments. The Eighth Circuit in *Olson*, *supra*, similarly recognized that periodic workers compensation payments may be received, in substitution, as a lump-sum award. Thus, finding that lump sum payments are substitutes for periodic payments does

11

not render "periodic" meaningless nor contrary to their clear meaning given the workers' compensation context.

    ii.        Does Delta's interpretation promote the Plan's goals?

One measure of the reasonableness of a plan administrator's interpretation is the extent to which it promotes the plan's goals. *See Finley*, 957 F.2d at 621 ("In determining whether the SAMBA Board's interpretation … [was] reasonable, we consider whether their interpretation is consistent with the goals of the Plan…."). Delta argues that its interpretation furthers the Plan's goals by (1) preventing multiple forms of income replacement, i.e., receiving a full pension and workers' compensation simultaneously and (2) treating Plan participants fairly. Plaintiffs contend that Delta's interpretation treats them unfairly because pension recipients who receive monthly workers' compensation payments have their pension fully restored at age 67 (when worker's compensation payments end), but pension recipients who received a lump sum workers' compensation settlement continue to have pension offsets beyond age 67.

As the Plan fiduciary, the Delta AC is obligated to treat pension recipients fairly. *See e.g., Boyd v. ConAgra Foods, Inc.*, 897 F.3d 314, 322–23 (8th Cir. 2018) (holding that an ERISA fiduciary has an obligation to treat plan participants fairly). The following chart shows how Delta's interpretation treats non-settling and lump-sum settling employees equally. This very basic example assumes that workers' compensation (WC) payments cease at age 67, based on the fact that, under the Plan, full pension would

otherwise begin at age 67.[4] It demonstrates how Plaintiffs' reading would result in a hypothetical payment of $13,200 per year from age 65–77 to a lump-sum payee, in contrast to $12,000 per year to a monthly payee, and Defendants' interpretation results in $12,000 per year over the relevant time period to both the lump-sum and monthly payee. The parties do not dispute that any workers' compensation offset ends at the actuarial life expectancy, which in this hypothetical is 77 years.

---

[4] Plaintiffs' proposed hypothetical found in their summary judgment brief also used age 67. Plaintiffs' Summ. J. Br. at 28, ECF 60.

| **HEARING** | **SETTLEMENT**<br>(PLAINTIFFS' INTERPRETATION) | **SETTLEMENT**<br>(DELTA INTERPRETATION) |
|---|---|---|
| **Injured employee, Age 57**<br>Scenario:<br>Goes to hearing for WC → Award is $24,000<br><br>Has SSDI until pension normal retirement age under the Plan (age 65, Plan Section 1.2.18).<br><br>Award is prorated monthly: $24,000/10 years /12 months = $200/month<br><br>Assumed SSDI is $1,000/month | **Injured Employee, Age 57**<br>Scenario:<br>Settles WC → $24,000<br><br>Has SSDI until pension normal retirement age under the Plan (age 65, Plan Section 1.2.18).<br><br>Settlement is prorated monthly: $24,000/20 years /12 months = $100/month<br><br>Assumed SSDI is $1,000/month | **Injured Employee, Age 57**<br>Scenario:<br>Settles WC → $24,000<br><br>Has SSDI until pension normal retirement age under the Plan (age 65, Plan Section 1.2.18).<br><br>Settlement is prorated monthly: $24,000/20 years /12 months = $100/month<br><br>Assumed SSDI is $1,000/month |
| **Age 57 - 65**<br><br>SSDI = $1,000<br>WC = $200<br><br>SSDI is offset by WC<br><br>$800/month SSDI + $200 WC over 8 years:<br>$76,800 SSDI and $19,200 WC<br>sum: $96,000 over 8 years | **Age 57 - 65**<br><br>SSDI = $1,000<br>WC = $100<br><br>SSDI is offset by WC<br><br>$900/month SSDI + $100 WC over 8 years:<br>$86,400 SSDI and $9,600 WC<br>sum: $96,000 over 8 years | **Age 57 - 65**<br><br>SSDI = $1,000<br>WC = $100<br><br>SSDI is offset by WC<br><br>$900/month SSDI + $100 WC over 8 years:<br>$86,400 SSDI and $9,600 WC<br>sum: $96,000 over 8 years |
| **Age 65 - 67**<br><br>Pension = $1,000<br>WC = $200<br><br>Pension IS offset by WC<br><br>$800/month Pension + $200 WC over 2 years:<br><br>$19,200 Pension and $4,800 WC<br>sum: $24,000 over 2 years | **Age 65 - 67**<br><br>Pension = $1,000<br>WC = $100<br><br>Pension is NOT offset by WC<br><br>$1,000/month Pension + $100 WC over 2 years:<br><br>$24,000 Pension and $2,400 WC<br>sum: $26,400 over 2 years | **Age 65 - 67**<br><br>Pension = $1,000<br>WC = $100<br><br>Pension IS offset by WC<br><br>$900/month Pension + $100 WC over 2 years:<br><br>$21,600 Pension and $2,400 WC<br>sum: $24,000 over 2 years |
| **Age 67 - 77**<br><br>Pension = $1,000<br>WC = $0<br><br>$1000/month Pension + $0 WC over 10 years:<br>$120,000 Pension and $0 WC<br>sum: $120,000 over 10 years<br><br>Sum between award and age 77:<br>$240,000 | **Age 67 - 77**<br><br>Pension = $1,000<br>WC = $100<br><br>$1000/month Pension + $100 WC over 10 years:<br>$120,000 Pension and $12,000 WC<br>sum: $132,000 over 10 years<br><br>Sum between settlement and age 77:<br>$254,400 | **Age 67 - 77**<br><br>Pension = $1,000<br>WC = $100<br><br>$900/month Pension + $100 WC over 10 years:<br>$108,000 Pension and $12,000 WC<br>sum: $120,000 over 10 years<br><br>Sum between settlement and age 77:<br>$240,000 |

Notes:

1. The Plan beings to deduct workers' compensation benefits from the pension at age 65, which is the normal retirement date under the Plan § 1.2.18.

14

As demonstrated in this chart, unlike Plaintiffs' contention that the Delta AC's interpretation "penalizes participants that settled their workers' compensation claim," the chart's hypothetical shows that Delta's interpretation equalizes lifetime income for Plan participants. Plaintiffs' Summ. J. Br. at 28; ECF 60. Further, a de novo review of the settlement documents shows it is reasonable to continue to offset the pension beyond age 67 because the Plaintiffs agreed that the lump sum settlement represented monthly *payments over their life expectancy*, not over their remaining pre-retirement years. For example, Plaintiff Wallace's settlement language states:

> In calculating the benefits paid to employee pursuant to this Stipulation for Settlement, the parties have taken into consideration the social security offset provision contained in Minn. Stat. §176.101, subd. 4…. The balance of $43,258.12…*shall represent payments made to him over his life expectancy*. The employee is currently 58.10 years old…and has a life expectancy of 22.43 years, or 269.16 months, per the life expectancy tables. The net award payable to the employee therefore represents payments in the amount of $160.72 per month.

Wallace Stip. for Settlement, Ex. 39, at DELTA 0420–21, ECF 73-2 at 224–25 (emphasis added).

As the example shows, if the Court accepted Plaintiffs' interpretation of the Plan (the middle column), it would result in a windfall to Plaintiffs, and treat employees who settled differently from employees who litigated their workers' compensation claims. Plaintiffs could argue that they are entitled to such windfall as a benefit of choosing to settle, but considering the settlements are silent as to the impact on the pension benefits, Plaintiffs leave open the possibility for multiple interpretations. Under Plaintiffs' Plan

15

interpretation, they both (1) avoid reducing their Social Security Disability Income and (2) avoid reducing their pension. Because Delta's interpretation of the Plan promotes equal treatment of plan participants, this supports the reasonableness of the Delta AC's interpretation under *Finley*. To the extent that equal treatment is a proxy for fair treatment, this factor favors Delta's interpretation.

    iii.    Does Delta's interpretation undermine ERISA, and is it consistent with prior interpretations?

Plaintiffs argue that the Delta AC violated ERISA when it looked outside the Plan—at the Social Security Administration practices and at Plaintiffs' settlements—to justify offsetting Plaintiffs' pensions. ERISA does not prevent a plan administrator from looking outside of a plan to find the ordinary meaning of terms. *See e.g., Boyer v. Schneider Electric Holdings, Inc.*, 993 F.3d 578, 582 (8th Cir. 2021) (upholding a plan administrator's decision to look to relevant state speeding law for plan meaning of "crime"). Although Delta's interpretation of documents outside of the Plan is subject to de novo review, the Court finds its interpretation reasonable. Therefore, Delta's use of the Social Security Act and settlement documents to provide meaning to Plan terms did not undermine ERISA because the workers' compensation offset was already authorized by the Plan.

Second, no party suggests that Delta has been inconsistent in its Plan interpretation—Plaintiffs merely argue that Delta has been consistently wrong. Defendants point to a nonbinding prior arbitration as evidence of such consistency. In the Railway Labor Act arbitration of *Delta Airlines v. Andrew W. Phillip*, the panel found

16

that the Delta AC had reasonably interpreted the Plan's Section 3.2 (Workers' Compensation) to permit monthly pension offsets by prorating the lump sum settlement. DELTA 002678, ECF 84-11 at 12. The panel there began by noting that the Plan is a negotiated agreement between Northwest/Delta and the union that includes § 7.1, which gives the Delta AC discretionary power to interpret the Plan's terms. The arbitrators found no abuse of discretion when the Delta AC interpreted the workers' compensation section to include lump sum settlements, finding that a workers' compensation does not need to be paid periodically to constitute a periodic benefit. Delta continues to advance the same plan interpretation. Delta's consistent plan interpretation makes it more reasonable under this factor.

For all of these reasons, the Court finds that the Delta AC's interpretation of the Plan's "Workers' Compensation Benefits" offset was reasonable. Plaintiffs were not wrongfully denied pension benefits under ERISA 502(a)(1)(B). Defendants are therefore entitled to Summary Judgment.

## II. Plaintiffs' Motion to Exclude Defendant's Expert

The Court finds that the issues presented by the expert in Plaintiffs' 702 Motion against Delta's expert are immaterial to the cross motions for summary judgment. The expert opined on whether lawyers for Plaintiffs knew or should have known about Delta's foreseeable interpretation of the offset provision. Individual knowledge by a party that did not draft the plan is immaterial to its meaning. *See e.g., Barker v. Ceridian Corp.*, 193 F.3d 976 (8th Cir. 1999) (holding that extrinsic evidence of employees who had no

part in drafting the plan was not relevant). Because the Court dismisses this action with this Order, Plaintiffs' Motion to exclude Defendants' Expert is denied as moot.

### III. Plaintiffs' Motion to Certify Class

Rule 23 of the Federal Rules of Civil Procedure permits the court to issue a summary judgment ruling before class certification. *See* Fed.R.Civ.P. 23(c)(1)(A) 2003 Amendments ("Other considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified."); *see also Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 896 (8th Cir. 2014). Here, the parties filed cross motions for summary judgment simultaneously with Plaintiffs' Motion to Certify Class and argued them at the same hearing. Therefore, the Court finds it appropriate to rule on these motions concurrently. Because the Court dismisses the action with this Order, Plaintiffs' Motion to Certify Class is moot.

IV. **Conclusion**

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [ECF 68] is GRANTED.

2. Plaintiffs' Motion for Summary Judgment [ECF 59] is DENIED.

3. Plaintiffs' Motion to Certify Class [ECF 54] is DENIED as MOOT.

4. Plaintiffs' Motion to Exclude Defendants' Expert Testimony [ECF 62] is DENIED as MOOT.

5. The Action is DISMISSED with PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 31, 2022

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge